[Cite as *Hice v. Hice*, 2023-Ohio-4497.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JEFFREY D. HICE, | : | APPEAL NO. C-230178 |
| | | TRIAL NO. DR2100298 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LAUREN E. HICE, | : | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 13, 2023

*Berry & Karl, LLC*, and *B. Bradley Berry*, for Plaintiff-Appellee,

*Hahn Loeser & Parks, LLP*, *Elisé K. Yarnell* and *Courtney Caparella-Kraemer*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Lauren Hice ("Mother") appeals the decision of the Hamilton County Domestic Relations Court naming plaintiff-appellee Jeffery Hice ("Father") as the residential parent for school registration purposes for their child, C.H. In a single assignment of error, Mother argues that the trial court abused its discretion in reaching this decision.

{¶2} Because the trial court appropriately weighed the competing testimony of Mother and Father and prioritized the best interest of C.H., the trial court did not abuse its discretion in naming Father as the residential parent for school registration purposes. Accordingly, we overrule Mother's assignment of error and affirm the judgment of the trial court.

### *Factual and Procedural History*

{¶3} Mother and Father were married in 2014, and C.H., who is now seven years old, is their only child. In 2021, Father filed his complaint for divorce.

{¶4} On May 10, 2022, the trial court held a hearing regarding C.H.'s kindergarten placement. At the hearing, Mother testified that C.H. was attending both The Children's School in the Oak Hill School District, which was closer to Mother's home, and The Goddard School ("Goddard") in the Little Miami School District, which was closer to Father's home. Both Mother and Father requested that C.H. be placed in the kindergarten that was geographically closest to them. Mother and Father also testified that both sets of C.H.'s grandparents were involved in C.H.'s school transportation. Father further testified that C.H. was thriving at Goddard. Based on this testimony, the trial court ruled that it would be in C.H.'s best interest to continue attending Goddard. Mother moved for reconsideration, which the trial court denied.

{¶5}     On February 15, 2023, the trial court held a final hearing on the issue of C.H.'s school placement.  At the hearing, Father testified that if he were named the residential parent for school registration purposes, he would enroll C.H. at the Little Miami Early Childhood School ("Little Miami").  He further testified that Little Miami was eight minutes from his home and that some students who attended Goddard with C.H. would also attend Little Miami for the first grade.  He also testified that C.H.'s paternal grandfather assisted him with school transportation for C.H. and would continue to do so.  He testified that there was also a bus stop for Little Miami near C.H.'s maternal grandparents' home.  He testified that if C.H. attended Little Miami, C.H. would have after-school care at Goddard and that bussing would be provided between the two locations.  Father also testified that he had some flexibility in his work schedule and that if there was ever an emergency with C.H. at school, he could call out of work if needed.

{¶6}     Mother testified that if she was named the residential parent for school registration purposes, she would enroll C.H. at Oakdale Elementary School ("Oakdale").  Mother testified that Oakdale was nine minutes from her home and that it would take her over one hour to get to Little Miami from her home.  She further testified that Oakdale provided after-school care in the same building and that C.H.'s maternal grandmother occasionally assisted with C.H.'s school transportation.  But she also testified that C.H.'s maternal grandmother would not be able to continue doing this given her work schedule.  And she testified that if C.H. were to take the bus from Little Miami to his maternal grandparents' home, they would not be present.

{¶7}     Melanie Metz, C.H.'s kindergarten teacher at Goddard, also testified at the hearing.  She testified that in the year she had been teaching C.H., she noticed that

he had become less shy and more outgoing. She further testified that C.H. was a leader in the classroom. She also testified that Goddard followed Little Miami's kindergarten curriculum.

{¶8} In its final decision on school placement, the trial court found that it was in C.H.'s best interest to attend Little Miami. In making this finding, the trial court relied on Metz's testimony and concluded that it was important to maintain stability and continuity in C.H.'s life. The trial court further noted that both sets of grandparents living close to Little Miami provided a built-in support system that could alleviate some of the parties' burden of living far apart.

{¶9} The trial court entered a final judgment entry and decree of divorce. Mother now timely appeals.

### *Abuse of Discretion*

{¶10} Mother's sole assignment of error alleges that the trial court erred in designating Father as the residential parent for school registration purposes.

{¶11} We review a trial court's custody decision for an abuse of discretion. *Saylor v. Saylor*, 1st Dist. Hamilton No. C-190463, 2020-Ohio-3647, ¶ 10. "An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotation marks omitted.) *Rummelhoff v. Rummelhoff*, 1st Dist. Hamilton No. C-1900355, 2020-Ohio-2928, ¶ 17.

### *Facts Not in Evidence*

{¶12} In her first issue presented for review, Mother contends that the trial court relied on facts not in evidence in reaching its decision. Specifically, Mother

asserts that the trial court incorrectly assumed that C.H.'s maternal grandparents could assist in school transportation for C.H. Further, Mother argues that it was unclear exactly how many students, if any, from Goddard would transfer to Little Miami for the first grade.

{¶13} The trial court, however, acknowledged that C.H.'s maternal grandparents' work schedule made it difficult for them to assist Mother with C.H.'s school transportation. And in light of this, the trial court also considered that there were multiple options for after-school transportation from Little Miami. Further, the trial court noted that C.H.'s maternal grandmother had historically picked up C.H. on Mother's days with C.H. In fact, Metz contradicted Mother's testimony that C.H.'s maternal grandmother only occasionally picked up C.H. by testifying that she observed C.H.'s grandmother picking up C.H. on most days that Mother had C.H. Additionally, Mother testified that for part of the week, she worked until late evening and would rely on C.H.'s maternal grandmother to pick up C.H. on those days.

{¶14} Importantly, while Mother emphasizes that the trial court did not hear testimony from C.H.'s maternal grandparents as to their willingness and ability to assist with school transportation, she does not explain why C.H.'s maternal grandparents did not testify or submit an affidavit. If Mother believed that the involvement of C.H.'s maternal grandparents in C.H.'s school transportation was a crucial issue in determining school placement, she was free to submit evidence to that effect before the trial court.

{¶15} Because Mother did not, the trial court was left with the competing testimony of Mother and Father. And the trial court was in the best position to observe the witnesses' demeanor and weigh their credibility. *Lemon v. Lemon*, 5th Dist. Stark

5

No. 2010 CA 00319, 2011-Ohio-1878, ¶ 52. As the appellate court, "[o]ur role is to determine whether there is relevant, competent, credible evidence upon which the factfinder could base his or her judgment." *Id.*

{¶16} Given Father's testimony that there were multiple options for school transportation to and from Little Miami, Metz's testimony that C.H.'s maternal grandmother was actively involved in C.H.'s school transportation, and Mother's testimony that she would require C.H.'s maternal grandmother's assistance with school transportation for at least part of the week, there was relevant, competent, and credible evidence upon which the trial court based its judgment that the proximity of both sets of grandparents to Little Miami created a built-in support system for C.H. *See id.*

{¶17} Mother's argument as to the number of children that would follow C.H. from Goddard to Little Miami fails for similar reasons. Mother focuses on the exact number of children that would transfer schools with C.H. It was not the exact number that was relevant to the trial court's decision, but rather the fact that there was definitive testimony from both Father and Metz that C.H. would have at least a few familiar classmates at Little Miami. Thus, there was also relevant, competent, and credible evidence upon which the trial court determined that C.H. made friends at Goddard School who may travel with him to Little Miami. *See id.*

{¶18} Accordingly, we hold that the trial court did not abuse its discretion in relying on testimony regarding the involvement of C.H.'s grandparents in school transportation and the possibility of familiar classmates for C.H. at Little Miami.

### *Reliance on the Temporary School Placement Order*

**{¶19}** Next, Mother argues that the trial court relied too heavily on the temporary order placing C.H. at Goddard for kindergarten. But this argument ignores the trial court's detailed summary of the final hearing on school placement for C.H. In fact, the trial court did not reference testimony from the prior hearing at all and only considered testimony from the final hearing. Mother's argument mischaracterizes the trial court's decision and is therefore without merit.

### *Proximity of Schools to Parental Homes and Workplaces*

**{¶20}** Lastly, Mother asserts that the trial court abused its discretion by ignoring the impact of the distance between Little Miami and Mother's home and workplace.

**{¶21}** As with most of the issues in this case, the trial court had to weigh competing testimony from Mother and Father. While Father testified that his home was an eight-minute drive to Little Miami, Mother testified that her home is over an hour away from Little Miami and only a nine-minute drive from Oakdale. Thus, it was clear from the testimony that either Mother or Father would be driving a substantially greater distance to C.H.'s school.

**{¶22}** But it was also clear that Father had more support near him. Further, Metz testified that C.H. had shown significant progress at Goddard, which was somewhat of a feeder school for Little Miami and also utilized the curriculum from Little Miami. Faced with parents living in distant school districts, the trial court prioritized the stability and continuity of C.H.'s education, and we see no reason to disturb that finding. While we sympathize with the inconvenience Mother faces in light of this decision, Father would have experienced that same inconvenience had the

trial court ruled in Mother's favor. Because the trial court's decision places the greatest emphasis on the best interest of C.H., it was not an abuse of discretion. *See Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 18 (noting that determinations as to the designation of the residential parent must be in the best interest of the child).

**{¶23}** Therefore, we overrule Mother's assignment of error and affirm the judgment of the trial court.

### *Conclusion*

**{¶24}** Because the trial court appropriately balanced the competing testimony of Mother and Father with the best interest of C.H., we hold that the trial court did not abuse its discretion in naming Father as the residential parent for school registration purposes. Accordingly, Mother's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur**.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.